# MARINE ENGINEERS' BENEFICIAL ASS'N NO. 13 v. NATIONAL LABOR RELATIONS BOARD et al.

### No. 10878.

United States Court of Appeals Third Circuit.

Argued Jan. 22, 1953.

Decided March 10, 1953.

Abraham E. Freedman, Philadelphia, Pa., Ruth Weyand, Chicago, Ill. (Freedman, Landy & Lorry, Philadelphia, Pa., and Clifford D. O'Brien, Chicago, Ill., on the brief), for petitioner.

Bernard Dunau, N. L. R. B., Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel and Samuel M. Singer, Attys., N. L. R. B., Washington, D. C., on the brief), for respondent.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This case presents a question of the power of the National Labor Relations Board under the Labor Management Relations Act of 1947.[1]

The set of facts, at this stage of the litigation at any rate, is simple and there is involved a pure question of law. The Marine Engineers' Beneficial Association made charges to the National Labor Relations Board against a division of the International Longshoremen's Association and others. The matter had to do with pressure exerted by the I.L.A. against certain tugboat owners to compel the owners not to employ the members of Marine Engineers unless they joined the International Longshoremen's Association.[2]

With the merits of the charge and the defense thereto we are not concerned at present. The Labor Board, following negotiation and conference, entered into a stipulation with the Longshoremen's Association and the other parties charged. Pursuant to that stipulation a "consent order" was entered. But the order was not consented to by the charging party, Marine En-

---

1. 29 U.S.C.A. § 141 et seq.

2. This was alleged to be a violation of § 8 (b) (4) (A) of the Act, 29 U.S.C.A. § 158 (b), which provides: "It shall be an unfair labor practice for a labor organization or its agents—* * * (4) to * * * induce * * * the employees of any employer to engage in a strike * * * where an object thereof is: (A) forcing or requiring any employer or self-employed person to join any labor or employer organization * * *."

gineers. Indeed that organization protested against the terms of the settlement and asked for a hearing at which it could present evidence and make a record. This was refused by the Board. The case is here on petition of Marine Engineers seeking review of the Board's action.

From the above statement it is seen that not only is the question one of law but it presents but a single issue. It is whether the Labor Board and a party charged with a violation of the Labor Management Relations Act can effectively arrange a settlement without giving the charging party a hearing on his objections thereto. This is a matter of obvious importance. The Labor Board tells us that in the year 1951 about 70 per cent of the 5500 unfair labor practice cases were settled without the necessity of a contested proceeding. It points out that negotiation and settlement are inherent in the operation of Labor Board functions. Its brief also "estimates" that 5 per cent of the settlements are effected over the objections of the charging party. We do not know, however, who has done the estimating and we are not very much impressed with the figures even if the "estimate" is accurate because we know that a great many things go on administratively which have to be changed when administrative practice comes up for judicial examination.

The Board cites N.L.R.B. v. Pure Oil Company, 5 Cir., 1939, 103 F.2d 497, as a case where the charging union was not a party to the settlement. That fact was denied by the petitioner here and we have obtained the record and the briefs in that case through the courtesy of the Clerk of the Court of Appeals for the Fifth Circuit. From that record it appears that the charging party through its attorney did participate in the stipulation as to the notice to be posted at the employers' refinery. It does not appear that the charging party was

signatory to some of the other documents involved in the case. But we think that the fact that the signature of the charging party is on the stipulation mentioned is sufficient to show that the Board is mistaken in its citation of the case as authority for its position.

The question presented is one which is not settled so far as the parties or we have been able to discover. The Board emphasizes two things. One is the necessity of negotiation, agreement, persuasion, and settlement in the carrying out of its duties. The second is the public nature of the Board's interest; it is exercising a public function in carrying out the purposes of the Act, and individual workers or employers have no vested rights in the process or results of the exercise of that function.

We have no disagreement with that point of view. Back in 1941 this court, in Jacobsen v. N. L. R. B., 3 Cir., 120 F.2d 96, 100, recognized that "the jurisdiction of the Board is not a compulsory jurisdiction." We said that the Board does not have to issue a complaint except in the exercise of its sound discretion, and that its discretion in this respect is not subject to court review. This is in accord with the views of other courts upon the same and similar questions.[3] That the Board is charged with the responsibility of representing public interest, not that of private litigants, we have stated has been said by courts "over and over again." N.L.R.B. v. Condenser Corp. of America, 3 Cir., 1942, 128 F.2d 67, 81.

But this is one of those situations where general propositions do not decide concrete cases. Granted that no one has authority to compel the Labor Board to issue a complaint against a party accused of violating the statute (and note that that may be an employee charge or an employer charge under the present law), what is the situation if the Board does issue a complaint? We dealt with one phase of that question

3. See N. L. R. B. v. Indiana & Michigan Electric Co., 1943, 318 U.S. 9, 18, 63 S. Ct. 394, 87 L.Ed. 579. Likewise, after proceedings and an order of the Board only the Board may petition for enforcement. Amalgamated Utility Workers v. Consolidated Edison Co., 1940, 309 U.S. 261, 60 S.Ct. 561, 84 L.Ed. 738. If it decides against enforcement, or decides to negotiate a compromise rather than strict compliance, the decision is not generally reviewable. See Stewart Die Casting Corp. v. N. L. R. B., 7 Cir., 1942, 132 F.2d 801.

in the Jacobsen case just cited, and we concluded that either party could petition the court for leave to adduce additional evidence upon any pertinent issue.[4] In other words, we thought that if the complaint was once entered the situation changed. In Amalgamated Utility Workers v. Consolidated Edison Co., 1940, 309 U.S. 261, 264, 60 S.Ct. 561, 563, 84 L.Ed. 738, Mr. Chief Justice Hughes pointed out that it is the Board and the Board alone which has power to issue its complaint against the person charged with the unfair labor practice. But in the next sentence he says, "If complaint is issued, there must be a hearing before the Board or a member thereof or its agent." This statement if taken alone and literally would settle the question in our case in favor of the petitioner. It is doubtful whether the Court's language, however, was meant thus to be applied to quite a different situation, although the Chief Justice, on the next page of the report, does emphasize that the opportunity given to a person aggrieved is "an opportunity afforded to contest a final order of the Board, not to enforce it."

We think there is quite a little, though not overwhelming, proof of the correctness of the petitioner's position in the practice of the Board itself. Its rules and regulations permit the charging party to be listed as a party to the proceedings from the outset instead of relegating him to intervention.[5] He is a party aggrieved under Section 10 of the statute and as the Edison opinion says "may contest" the correctness of the Board's order.[6]

The petitioners have cited to us a book by Mr. Joseph Rosenfarb, sometime attorney for the N.L.R.B., called The National Labor Policy and How It Works. In the book Mr. Rosenfarb describes the forms used in these consent proceedings. They uniformly include the agreement of the charging party as well as the Board and the party against whom complaint is made.[7]

4. Section 10(e) of Wagner Act provided: "If either party shall apply to the court for leave to adduce additional evidence * * * the court may order such additional evidence to be taken before the Board * * *." In the Jacobsen case we construed this to permit the charging party to make such application, since under § 10(f) a charging party may be one aggrieved by the Board's order. We did not read § 10(c), which gives the Board discretion on the subject of additional evidence, as limiting this right.

5. National Labor Relations Board, Rules and Regulations, 29 C.F.R. § 101 et seq. (1949). "The term 'party' as used in this part shall mean the Regional Director * * *, and any person named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party, in any Board proceeding, including, without limitation, any person filing a charge or petition under the act, any person named as respondent, as employer, or as party to a contract * * *; but nothing in this section shall be construed to prevent the Board * * * from limiting any party to participate in the proceedings to the extent of his interest only." § 102.8.

"§ 102.38 Rights of Parties. Any party shall have the right to appear at such hearing in person * * *, to call, examine and cross-examine witnesses, and to introduce into the record documentary or other evidence, except that the participation of any party shall be limited to the extent permitted by the trial examiner."

6. 29 U.S.C.A. § 160(f) provides: "Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order * * *." It is settled that "any person" includes the charging party. See cases cited note 12, infra.

7. Rosenfarb, The National Labor Policy and How It Works (Harpers, 1940). At page 486 the author says: "* * * 9,951 cases, or 52 per cent, were closed by agreement of both parties as a result of the attempts of the regional directors to obtain compliance with the act." At page 518: "The third and more preferable method of settlement, by a consent board order and court decree, contains the jurisdictional facts, a consent to the entry of a specific board order, and a consent to the entry of a court decree enforcing the order. * * * The parties to the settlement agreements are the employer [the party charged], the individual or union bringing the charge, the intervenor, and the board's attorney. * * * The form of the execution of the stipulations is as follows:

"The Smith Company, by Malcolm Smith, President.

The X Union, by Peter Young, President (or other official).

John Jones, Attorney, N.L.R.B."

We think, too, that the requirements of the Administrative Procedure Act[8] are in point. Section 5(b), 5 U.S.C.A. § 1004(b), provides: "The agency shall afford all interested parties opportunity for (1) the submission and consideration of facts * * * and (2) to the extent that the parties are unable so to determine any controversy by consent, hearing, and decision upon notice and in conformity with sections 1006 and 1007 of this title." Section 6(a), 5 U.S.C.A. § 1005(a), provides: "* * * Every party shall be accorded the right to appear in person * * * in any agency proceeding."

It is true that the Labor Management Relations Act comes later than the Administrative Procedure Act, and that the language in the former is practically identical with that of its predecessor, the Wagner Act.[9] But again the Administrative Procedure Act provides: "* * * No subsequent legislation shall be held to supersede or modify the provisions of this chapter except to the extent that such legislation shall do so expressly. * * *"[10] We know of no "express" provision in the 1947 Act which relieves the Labor Board of this requirement.

The difficulty in this case comes because in changing times and the evolution of administrative procedure our old analogies are not in point. The charging party in a labor case is something like a complaining witness in a criminal case. But he is certainly much more than that for a complaining witness is certainly not entitled to appeal even where an appeal is allowed for the prosecution in a criminal case. On the other hand, the charging party is not like the ordinary plaintiff in a lawsuit, who does not have to have anybody's permission to go ahead with his action if he can pay the required fees. This is something in between.

■ Our best judgment is that the charging party, after complaint is issued, does have some standing.[11] The Board may refuse to do anything about his complaint as already indicated. But once it does, and once it goes to the extent of filing a complaint, then we think that he is entitled to have a chance to be heard as the Administrative Procedure Act requires. He has a right to object if after hearing he does not like the result. But he certainly has nothing on which to base his objections unless there is a hearing and a record is made so that the court has something to go on.[12]

In other words, we conclude that the petitioners are right in this case; that they are entitled to a hearing to present whatever facts they can find to support their position. And if they believe the Board to be

8. 5 U.S.C.A. § 1001 et seq. The Act applies to the National Labor Relations Board. Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; N. L. R. B. v. Pittsburgh S.S. Co., 1951, 340 U.S. 498, 71 S.Ct. 453, 95 L.Ed. 479.

9. 29 U.S.C.A. § 160(b) provides: "* * * The person so complained of shall have the right to file an answer to the * * * complaint and to appear in person * * * and give testimony * * *. In the discretion of the * * * Board, any other person may be allowed to intervene in the said proceeding and to present testimony. * * *" This is a verbatim re-enactment of the equivalent portions of § 10(b) of the Wagner Act, which was uniformly interpreted as granting only the party charged with a violation of the Act a right to a hearing. National Licorice Co. v. N. L. R. B., 1940, 309 U. S. 350, 361–363, 60 S.Ct. 569, 84 L.Ed. 799; Oughton v. N. L. R. B., 3 Cir., 1941, 118 F.2d 486, 495; Semi-Steel Casting Co.

v. N. L. R. B., 8 Cir., 1947, 160 F.2d 388, 393. No case so far as we can find, however, directly held that the charging party was not entitled to get his evidence into the record.

10. 5 U.S.C.A. § 1011. See N. L. R. B. v. Stocker Mfg. Co., 3 Cir., 1950, 185 F.2d 451, 454.

11. In addition to the standing to get a court order to adduce additional evidence, supra, a charging party may appeal from a dismissal of a complaint by the Board, Joliet Contractors' Ass'n v. N. L. R. B., 7 Cir., 1952, 193 F.2d 833, and may appeal from an order granting relief to other charging parties but not as to him. Hicks v. N. L. R. B., 4 Cir., 1939, 100 F. 2d 804; Albrecht v. N. L. R. B., 7 Cir., 1950, 181 F.2d 652.

12. The Labor Management Relations Act requires a record to be made. 29 U.S.C. A. §§ 160(e), 160(f). So does the Administrative Procedure Act. See 5 U.S.C.A. §§ 1005(b), 1006(d), 1007(b).

550

wrong after it makes an order they can get court review both on the questions of fact and on the questions of law.

There is sharp dispute between the parties as to whether the procedure of a hearing was not from the beginning the policy of the Board. The evidence is interesting but not conclusive. The interpretation of its enabling act by an administrative body is, of course, important as bearing upon the effect of a statute, but interpretation given by an individual member of a Board or by its attorney is not, we think, to be taken as that official kind of interpretation to which courts must pay attention. In any event, we think the general policy is clear that people who bring charges and succeed in getting complaints to be issued are entitled to a hearing. This, we think, will not seriously interfere with the efficient working of an administrative body. And it will, in our judgment, tend to give the party who feels himself injured and has made a complaint a better chance to have his complaint remedied. We think our conclusion effectuates the policy of the Act and that since it involves a question of law, it in no sense interferes with the expert administrative functions of the Board.

The decision of the Labor Board is set aside and the case remanded for proceedings not inconsistent with this opinion.